General Term—January 1855.

Before Judges STORER, GHOLSON, and SPENCER.

JACOB RIDENOUR *vs.* JAMES SAFFIN et alias.

[In error to Special Term held by STORER, J.]

The refusal to grant a motion for an involuntary nonsuit is not matter of error.

The power conferred upon the General Assembly by the 6th Sec. of the 13th Art. of the Constitution, to organize municipal corporations for local government involves that of bestowing upon them authority to provide the necessary means by taxation and assessment, for sustaining and carrying out the objects of such government. Were it otherwise, the latter clause of said section directing the Assembly "to *restrict* such power of taxation and assessment," pre-supposes its existence.

The Act of Assembly conferring upon cities power to levy assessments for the improvement of streets, upon the property abutting thereon, in proportion to the number of feet *front* so abutting, is not in conflict with the constitutional provision in regard to the taking of private property for public use, which declares that "when "taken for the purpose of making or repairing roads, &c., a compensation shall be "made to the owner (therefor) in money; and such compensation shall be assessed "by a jury without deduction for benefits to any property of the owner."

Neither is it in conflict with that provision of the Constitution which declares that "laws shall be passed, taxing by uniform rule all moneys, &c.; and all real and "personal property according to its true value in money."

Difference between "taxes" and "assessments." The former are levied for *general public* purposes, upon all alike; and are compensated for by the equal protection of government afforded to all. The latter are laid for *local* purposes, upon local objects, and are recompensed in local benefits and improvements.

An ordinance to grade the Hamilton road *from* Western Avenue to the Mill Creek Bridge, will be held to *include* the avenue, if so acted upon by the city authorities; and will justify an assessment made by another ordinance *including* such avenue.

Jacob Ridenour *vs*. James Saffin et al.

Should the latter be irregular, because of its embracing property beyond the line of improvement, it is no cause of complaint on the part of those whose burthens are diminished thereby.

In an action by a contractor to recover the amount of such assessment, the certificate of the civil engineer, subject to whose approval the work is to be performed, (in the absence of fraud or collusion,) will be held conclusive of the amount and value of the work done.

The extension of the city limits, so as to include a public county road, vests thereafter the exclusive control of such road in the city authorities.

The action in the Court below was brought by the plaintiffs as assignees of McKeon & Reynolds, to recover the amount of an assessment laid upon the defendants' property, by the city of Cincinnati, to pay in part for the grading and macadamizing of the Harrison road, being a public highway within the city. It was proven by the plaintiffs on the trial, that a petition having been presented, by certain owners of adjacent property, to the City Commissioners, for the improvement of the road, they reported an ordinance to the City Council for that purpose, providing that the road should be graded and macadamized, "from the *Avenue house* to Millcreek bridge." And thereupon the City Council passed an ordinance in August 1853, for the grading and macadamizing of the road, "from the *Western Avenue* to the Millcreek bridge;" the expenses thereof to be ascertained and assessed in accordance with the general ordinances of the city. In pursuance of the ordinance referred to, a contract was entered into between the proper city authorities and McKeon & Reynolds, by which the latter agreed to do the work required, in the language of the contract, "from *Western Avenue* to the Millcreek bridge," under the direction of the City Civil Engineer, or City Commissioners; who were to have entire control over the manner of doing the same; and for which McKeon & Reynolds were to be paid at cer-

tain rates agreed upon. The work was done from the *east* line of Western Avenue to the bridge, under the super-intendence of the City Civil Engineer, who made an esti-mate of its amount and value, agreeably to the contract, and furnished a written certificate, under date of February 14th, 1854, that its entire value was $6,699, which would require a levy of $3.58 per foot front upon the property bounding the road on each side, to pay for the same. Thereupon the City Council passed an ordinance on the 22d day of February 1854, whereby they ordered that the sum of $3.58 should be levied and assessed on each foot front of the several lots of land abutting the road, from the *east* line of Western Avenue to the Mill Creek Bridge, as the same was delineated on the *Civil Engineer's plat*, on record, &c., to defray the expenses of said grading and macadamizing, and that the owners of said lots should pay the same to McKeon & Reynolds, within twenty days from the date of said ordinance.

By the plat referred to, it appears, that Western Ave-nue extends no farther than the south line of the Hamilton Road, west of which, on the south side of said road lie the properties of Bates and Ernst, 912 feet front in all; and west of the *east* line of which, on the north side of the Avenue, extended at right angles across said road, are the properties of different persons, including that of the defendant, fronting in all 956 feet on the road, making together 1868 feet; of which the defendant owned 87 feet; and upon which the assessment of the Civil Engineer was made.

On the 20th March, 1854, the City Civil Engineer gave a certificate to McKeon & Reynolds, that the work was satisfactorily done, and accepted by the City Commission-

ers. The amount of the assessment laid upon the defendant, in respect of the 87 feet of ground said to be owned by him, at the rate aforesaid, was $311.52; which was assigned by McKeon & Reynolds to the plaintiffs. The quantity of ground owned by the defendant, as proven by the plaintiffs, was only 75 feet, upon which the assessment at the above rate would have been $278.55. Payment of the amount assessed against him was demanded by the plaintiffs and refused by the defendant; to recover which suit was brought. The plaintiffs' testimony being closed, the defendant's counsel moved a *non-suit,* which being refused, an exception was taken.

The defendant, thereupon, introduced evidence, proving that said road had been constructed by the Cincinnati & Harrison Turnpike Company, before the district through which it ran became part of said city; that by the charter of said company, they were authorized to lay out the same, not more than 100 feet in width. That by authority of an Act of the General Assembly, the portion of the road referred to was transferred to the Commissioners of Hamilton County, for a county road, and remained under the exclusive charge of the Commissioners, until the year 1849, when said district having become annexed to the City of Cincinnati, the road was *abandoned* by the County Commissioners, and taken under control by the city authorities, as one of the city streets; that the defendant, at the time of the assessment, was owner of only an *undivided half part* of said 75 feet of ground. And the defendant further offered to prove, by other testimony than that of the said city officers, that the work was not done as required by the contract, but was of *inferior quality,* and of less value, than the contract price, which

testimony was rejected by the Court, "unless the defendant should be able also to prove *collusion* between the officers of the city accepting the work, and the parties contracting therefor." To which ruling of the Court the defendant *excepted.*

No further testimony being offered on either side, the Court rendered judgment in favor of the plaintiff, for the sum of $139.50; being at the rate of $3.50 per foot front, on 37½ feet of ground, owned by defendant.

Thereupon the defendant moved for a new trial, on two grounds: 1. That the finding of the Court was contrary to law. 2. That it was contrary to the evidence in the case; which motion, being overruled by the Court, the defendant excepted to the judgment of the Court.

The following errors were assigned upon the record:

1. That the Court erred in not overruling the plaintiffs' testimony, and requiring him to become non-suit, upon the defendant's motion.

2. That the Court erred in rejecting the defendant's testimony.

3. That it erred in not granting the defendant a new trial in the cause.

4. That it erred in entering up judgment for the plaintiff.

SPENCER, J. delivered the opinion of the Court.

With regard to the error first assigned, it is enough to say, that the refusal of the Court to grant a *non-suit* in any case, is matter of discretion merely, and does not therefore constitute the ground for a petition in error.

The 3d and 4th assignments of error involve substantially the same matters, and will therefore be considered together.

It is claimed by the plaintiff in error, that the plaintiffs below were not entitled to recover, 1st, because the General Assembly could not confer upon the City Council of Cincinnati authority to levy a special tax or assessment upon the owners of property bounding upon a street, for the repair or improvement of such street; 2d, because, if it could confer such authority, the same could only be exercised by levying the assessment upon the property according to its actual value in cash; and not according to the number of feet front, by which it might bound upon such street; 3d, because the assessment itself was irregular and void.

As to the power of the General Assembly to authorize the City Council to make the assessment: By the 6th Sec. of the 13th Art. of the Constitution, it is declared, that "the General Assembly shall provide for the organi-"zation of cities and incorporated villages by general laws." This authority to *organize* cities and villages for purposes of municipal government, necessarily includes that of bestowing upon them power to create and employ the necessary means for sustaining and carrying out the objects of such government, including that of taxation and assessment; power to establish a police, and to raise funds for its support; power to put and to keep in repair their streets and highways, and to provide the means for such repairs. If any doubt could exist upon the subject, it must be removed by the latter clause of this same Section, which provides that the Assembly "shall *restrict* their "power of taxation and assessment, so as to prevent its "abuse." To *restrict* pre-supposes the existence of the thing restricted, *i. e.* power to levy *taxes* and *assessments.* But the constitution itself no where *limits* or prescribes

Jacob Ridenour *vs.* James Saffin et al.

the *mode* in which such assessment shall be made. This is left to the direction of the General Assembly. It could not have escaped the sagacity of those who framed this constitution, among whom were some of the *oldest* and *ablest* lawyers of the State, that under the old constitution, during the period of half a century, laws were constantly passed, conferring upon towns and villages the power to levy special assessments upon the owners of property, in the *immediate vicinity* of an improved street or highway, to pay for such improvement; and that such laws had received the express sanction of *judicial decision.* The case of Bonsall and wife *vs.* the Town of Lebanon, 19 *Ohio* 421, had recently been decided by the Supreme Court, (of which a distinguished judge was then also a member of the Constitutional Convention,) where it was held, that "the *least onerous* way "in which such improvements could be made was, by im- "posing upon the proprietors of lots more immediately "benefitted by the work the duty of performing it." If, therefore, it was intended to abolish the system, or create a new one, it would have been done in unmistakeable terms, and not left to implication, from general language, used in reference to another subject. We refer to the 19th Sec. of the *Bill of Rights,* in which it is said, that "private "property shall ever be held inviolate, but subject to the "*general welfare.* When taken in time of war, &c., or for "the purpose of making or repairing roads, which shall be "open to the public without charge, compensation to the "owner shall be made in money, &c. And such compen- "sation shall be assessed by a jury, without deduction for "benefits to any property of the owner."

It is supposed, (by the plaintiff's counsel,) that this Section of the Bill of Rights is in necessary conflict with

the exercise of the power to assess a *local district* for a local improvement; because, it is said, if the land itself, or materials upon the land, of an *individual*, cannot be taken for the purpose of making or repairing a *road*, without compensation in money therefor, and without respect to *benefits*, how can money, which is equally property of the same individual, be taken for the same purpose, without a *like compensation?* However ingenious this argument may be, it seems unnecessary here to examine it, as the question it presents is not considered an open one in this State. To go no further, it is settled by the decision of Bonsall and wife *vs.* the Town of Lebanon, before cited, 19 *Ohio* 422, where the same objection was pressed, that the tax or assessment in question violated the 4th Section of the 8th Article of the Old Constitution, which reads "pri-"vate property ought, and shall ever be held inviolate, but "always subservient to the public welfare, provided a com-"pensation be made in money to the owner." But the Court replied, "it is still more preposterous to claim that "the proceeding is a violation of that Section. There is "here no appropriation of the property of the citizen to "the use of the public; on the contrary, the public have "expended money to improve the property of the citizen; "and it is equally right that the property itself should be "held for its re-imbursement." This decision accords fully with the exceedingly able opinion of the Court in the case cited by the plaintiff's counsel, of The People *vs.* The Mayor of Brooklyn, 4 *Comst.* 417, where it was held that a similar assessment was not an invasion of a like Section in the Constitution of New York. There the distinction between an assessment, or tax, for local objects, upon a particular neighborhood, and an exercise of the right of

eminent domain is well described, in brief thus : "Taxation
"operates upon a *community,* or upon a class of persons in
"a community, and by some rule of appointment.   The
"exercise of the right of *eminent domain* operates upon an
"individual, or individuals, and without reference to the
"*amount* or value exacted, from any other individual, or class
"of individuals."   Taxation supposes a just and fair contri-
bution to some public burthen ; the exercise of the right of
eminent domain requires the contribution *without reference*
in any wise to the *ability* of the party to make it.   See
also Parks *vs.* the City of Boston, 8 *Pick.* 228 ; the City
of Lexington *vs.* McQuillan's heirs, 9 *Dana 516* ; in the
latter of which it was held, that an assessment of property
on a particular block or square, for the making or repair
of a street, running past the same, was sanctioned by the
constitution of Kentucky ; though under the same Section
it was held by the same Court, in 5 *Dana,* that the taking
of the land for the opening of a street was prohibited, un-
less compensation was made without respect to benefits.

2. But it is said, that if the General Assembly could
lawfully confer such authority upon the City Council to
make special assessments, it could only be to make the
assessment upon the property charged, according to its
true *value in money,* and not, as in the present case, ac-
cording to the number of feet front by which it might
bound, on the street improved.

The foundation of this proposition is, that an *assessment*
of the kind contemplated is an exercise of the *taxing*
power, or rather that *assessment* is but simple *taxation;*
that the theory of our government is laid in *equality* of
taxation ; and that this can only be carried out in the
mode prescribed by the 2d Section of the 12th Article of

the Constitution, which provides that "laws shall be passed "taxing by uniform rule all moneys, &c., and also all real "and personal property, according to its true value in "money." Inasmuch as this Section provides that real estate shall be taxed, according to its true "*value in money*," it is claimed that an assessment for local purposes, by a local *organization*, cannot be made in any other manner, even though the same should be *equally*, or perhaps *more* just. The *assumption*, that taxation and assessment are in all respects *identical*, and must therefore be levied in the same mode, we are by no means prepared to concede. An assessment is doubtless a *tax ;* but the term implies something more; it implies a tax of a particular kind, predicated upon the principle of *equivalents*, or benefits, which are peculiar to the persons or property charged therewith, and which are said to be assessed or appraised according to the measure or proportion of such equivalents. Whereas a simple *tax* is imposed for the purpose of supporting the government generally, without reference to any *special* advantage, which may be supposed to accrue to the persons taxed. Taxes must be levied *without discrimination*, equally upon *all the subjects* of property, whilst assessments are only levied upon lands, or some other specific property, the subject of the supposed benefits ; to repay which, the assessment is levied. That a distinction exists between them, even in constitutional phrase, is apparent from the language used in Section 6, Art. 13, above quoted, which, speaking of municipal corporations, says, "shall restrict their power of *taxation* and *assessment*," &c.

We do not understand the language used in the second Section of the 12th Art. of the Constitution, viz. : "That

"laws shall be passed taxing all real and personal prop-
"erty, according to its *true value* in money."   To apply
to assessments of the character now under consideration,
such application would  defeat special assessments alto-
gether.   It applies only to the system of taxation for
general *public* purposes, which the Assembly was required
to establish, and its object was to produce *equality*, as set
forth in the latter part of the succeeding Section in the
same Article.   Every individual is supposed to reap the
advantages of government, in proportion to the protection
it affords his person and property ; the advantage of this
protection to property is in proportion to its *value*, whether
*real or personal*.   Hence the *burthen* of protection should
be in the same ratio.   Assessments for benefits specially
conferred upon individuals, greater than those which ac-
crue to the public at large from local improvements, in the
opening, or repair, of streets and highways, must, under
the  spirit of our institutions,  be imposed upon the same
principle of apportioning the assessment to the benefit.
But, to adopt the rule of apportionment, which fixes the
benefit according to the value of the property abutting
upon the street improved, would in many, if not in most
instances, operate very unequally and oppressively.   Thus
an exceedingly valuable piece of property, highly im-
proved, to which there was abundant other access, might
be situated with a small front upon the street improved,
so as to derive but little, if any, advantage from it; while
much, if not most, of the other property bounding upon
the street, which was before of comparatively small value,
might be enhanced two, or even fourfold.   Neither can
it be denied, that an assessment upon property by the
foot front would probably in many cases operate with
equal injustice, although, of the two modes, the latter

would in the main be most productive of equality, and has accordingly been the general mode by which such assessments, (especially in cities,) have been almost universally made.

The distinction thus taken between the levying of taxes for *general purposes*, and the laying of assessments for local objects, is directly and fully sustained by the case of The Mayor of New York, for the improving of Nassau Street, (*ex parte*,) 11 *Johns*. 77; where it was held, that a provision of the Constitution of New York, declaring "that no real estate belonging to any church shall be taxed "by any law of this State," did not apply to assessments made for the improving or repairing of the streets in the city of New York, because the exemption related to *general* and *public* taxes, not to special assessments for mere local purposes. As to the former, it was not intended to charge upon public charities any portion of the general burthens of government; but as to the latter, the improvement of a street contributing to the special benefit of the church and advantage of its property, it was reasonable that the expenses should be rateably charged upon such property. On the whole, we are satisfied that the constitution of Ohio did not intend, of itself, to regulate the manner of levying such assessments, any more than to prescribe the limits thereof; but has wisely left the whole matter to legislative discretion; to be exercised as circumstances should from time to time justify.

3. It is said that the plaintiffs below were not entitled to recover, because the assessment itself was irregular and void. The objection to the assessment is two-fold: 1st. That the assessing ordinance covers more property than was ordered to be improved. 2d. That the assessment itself embraces more property than the defendant owned.

As to the first objection, the petition sets forth that the City Council duly passed an ordinance for the grading and macadamizing of the Hamilton road, "from the *east* side of Western Avenue, to the Mill Creek bridge;" that the work was done under and in pursuance of the ordinance, and that the City Council, by another ordinance, assessed the property bounding upon the Hamilton road, from the east side of Western Avenue, to the Mill Creek bridge. The answer does not deny the passage of these ordinances as alleged, but simply *insists* that they are contrary to the constitution of the State. It stands *admitted* then by the pleadings, that the ordinance for the making of the improvement, embraced the street from the east line of *Western Avenue* to the bridge, and that the work was done between the same points. The assessing ordinance is precisely *co-extensive* with the other, and covers the same ground. It is true, that the ordinance offered in evidence, for the making of the improvement, describes the road as extending *"from"* the Western Avenue, to the bridge. The word *"from"* does not necessarily exclude the Avenue, although such, perhaps, would be its general construction. Still the word "from" is sometimes construed *inclusively,* according to the intention of the parties using it. In the present case, we feel disposed to give the ordinance and the contract that construction which seems to have been put upon it, by the parties themselves, and which is most consistent with the pleadings in the action; i. e. so as to *include* the Western Avenue. If this construction be correct, it is not denied, that the assessing ordinance is regular enough. But taking it the other way, the plaintiff in error is not prejudiced thereby. If the ordinance be construed to *exclude* Western Avenue, the contract, which is in the same language, must be so con-

strued; and in like manner, the certificate of the Civil Engineer, of the work done. If, therefore, the assessing ordinance covers more ground than has been *improved*, it operates beneficially for the plaintiff, who thereby becomes liable to a less contribution, than he otherwise would have been subject to. Suppose, however, it be, as claimed on behalf of the plaintiff in error, that the Hamilton road has *in fact* been improved to the eastern line of Western Avenue, whilst the ordinance requiring the improvement, only ordered it to be done to the *western* line of the Avenue, does that render the assessment wholly void? It seems to us not. There is nothing in the case going to show, that in consequence of this, the burthens of any of the owners of the property west of the Avenue, were increased thereby, nor was any evidence to that effect offered by the plaintiff in error. The *rateable assessment* would still appear to remain the same. We know it is said, that for aught that appears, the *heaviest* and most costly part of the *work* might have been done on that part of the road which was *not* required to be improved; but that would be to *reverse* the rule of *presumption*, which holds in matters of public duty, that the acts of the public officer are rightly done. Where it is not shown by proof, either way, how the matter stands, it ought to be presumed that the law-making power has acted in the spirit of equality and justice. The 31st Section of the "Act to provide for the organization of Cities and incorporated Villages," declares that in any proceeding instituted to recover the amount of any such assessment, "when the court trying the same shall be satisfied that work has been done and materials furnished, which according to the true intent of this act, would be properly chargeable on the lot through or by which the street

improved or repaired may pass, a recovery shall be permitted or a charge enforced, to the extent of the proper proportion of the value of the work or materials, which will be chargeable on such lot or land, notwithstanding any informality, irregularity, or defect in any assessment on the part of such municipal corporation or its officers." The *rule of proportion* adopted by the Judge who tried this cause, was the assessment fixed by the City Council, in their assessing ordinance, viz., at the rate of $3.58 per foot front of the lots bounding on the whole line of the improvement, and we see no good reason to doubt the propriety of this rule, in the present case.

2. As to the other objection to the assessment, that it covered more ground than the defendant owned, it is enough to say, that he was charged by the Court with the payment of only so much money, as at the *rate* of assessment adopted, would be justly chargeable upon the land actually owned by him; that is, the undivided half of 75 feet, and this the Court was clearly authorized to do, under the thirty-first Section of the law just recited.

Another objection to a recovery by the plaintiff below, (stated, but not pressed upon the Court) was, that it appeared from the evidence, that the Hamilton road, within the limits improved, was not one of the streets of the city, the same having been originally the property of a private company, and transferred under an act of the General Assembly to the Commissioners of Hamilton county, as a county road or public highway. By the annexation of that part of Mill Creek township to Cincinnati, in 1849, the road in question fell within the corporate limits of the city. From that time forward, it is in evidence that the County Commissioners have ceased to take any care or to exercise any control over it; but the

same remains open as a public highway. Now without caring to inquire whether the County Commissioners have any remaining interest in this road or not, it is manifest that so long as the same remains within the corporate limits, it is one of the streets or public highways of the city; and by the thirteenth Section of the Act above referred to, the care, supervision, and control of all public highways, streets, etc., within the city, is confided exclusively to the City Council, whose duty it is made to cause the same to be kept open, and in repair; and the twenty-sixth Section of the same act authorizes the same to be kept in repair by an assessment in manner above stated.

Another, and the only remaining cause assigned for the reversal of this judgment, is, that the court erred in not receiving upon the trial of the cause, evidence from the defendant, going to show that the work done by the plaintiffs, was of less value than the contract price. It seems to us, there is no conceivable ground upon which the evidence could with propriety have been admitted. There was no pretence of fraud on the part of the contractor, or of the public officer; or of any collusion between them. The contract had been fairly entered into, between the plaintiffs below, and the city; the work had been done at a *price* and in a *manner* entirely satisfactory to the city authorities, and accepted by them. The city therefore, was clearly liable for the whole amount of the work done at the *contract price,* and in an action brought against her would have been compelled to pay the full price agreed on. Her remedy over would have been by assessment upon the lots bounding on the street; and in the enforcing of such a remedy, it would not be allowed to show that the contract price was too high; or the work not as well done as it ought to have been. In all these

cases, the city stood, as it were, in the situation of an agent for the owners of lots, who are assessed to pay for the improvements contracted for; and by her acts, they are bound. The testimony we think was very properly rejected.

We find no error in the judgment of the Court in Special Term, and it will, therefore, be affirmed with costs.

SAFFIN & MALLON for plaintiff.

HOADLY & FERGUSON for defendant.