(Court of Common Pleas, Hamilton County
—August, 1896.)

THE STATE OF OHIO ON RELATION
OF FRED BADER, et al., COMPRIS-
ING THE BOARD OF COUNTY
COMMISSIONERS OF HAMIL-
TON COUNTY, OHIO. v. THE
CITY OF CINCINNATI,
et al.

A city has the right to demand and re-
ceive that portion of the bridge fund levied
in the county which is levied on city proper-
ty within the city, and has then the duty
to construct or keep in repair the bridges
within the city. Therefore the council of
the city of Cincinnati has the care of super-
vision, and control of all bridges within
the corporation, and has to keep them open
and in repair. And where the county com-
missioners constructed a viaduct within the
city of Cincinnati under a statute requiring
them to do so, it is incumbent on the city,
after such viaduct is completed, to assume
the care, supervision and control of it, and
to keep the same in repair, and that with-
out any further action on the part of the
county commissioners. And where the city
authorities, on being notified of the com-
pletion of such viaduct, refuse to assume
the care and control of it, the county com-
missioners are not the proper parties to in-
stitute a proceding in mandamus to compel
them to do so.

SAYLER, J.

This action is brought by the State of
Ohio on relation of Fred Bader. Henry Korb
and John Breen, composing the Board of
County Commissioners of Hamilton county,
against the City of Cincinnati, August G.
Herrmann. George Sterritt, John Washburn
and Johr Frey, composing the Board of City
Administration of said city, and the plain-
tiffs say, that said Herrmann, Frey. Sterritt
and Washburn. composing the Board of Ad
ministration of said city, are the successors
of the Board of Affairs of said city, and, as
such, have full control over and charge of
the public streets belonging to said city of
Cincinnati, and it is their duty to keep the
same in repair ; that the plaintiffs, as commis-
sioners of Hamilton county, were authorized
by an act of the legislature, passed April 3.
1889, (86 O. L., 580), supplementary to an
act entitled "An act for the erection of
bridges over Millcreek and the C. H. & D.
R. R. tracks in Hamilton county" passed
May 4, 1877, (74 O. L., 503), as amended
77th O. L., 369, 84th O. L.,356, to construct
a bridge over the railroad tracks and other
railroad property on the eastern side of Mill-
creek at Liberty street, in the city of Cin-
cinnati ; and to further continue the neces-
sary trestle work on said street, between
Garrard avenue and State avenue, such a
distance as may be necessary to make proper
approaches and connections for said improve-
ment ; that Liberty street is a street owned

and controlled by the city of Cincinnati, and
that said bridge or viaduct and trestle, is an
extension of said Liberty street, and was
erected and built for the benefit and for the
accomodation of public travel over said Lib-
erty street, and is a part of said street or
public highway ; and plaintiffs say, that on
September 23,1892, the Board of Legislation
of the city of Cincinnati, passed a resolution
whereby it was resolved, "That the County
Commissioners be and they are hereby in-
structed to turn said viaduct over to the city
of Cincinnati," and that on July 22, 1892,
(1893) the Board of County Commissioners
adopted a resolution, reciting that the
viaduct had been completed in accordance
with the acts of the General Assembly, re-
solved "That the said viaduct be and hereby
is turned over to the proper municipal au-
thorities of the city of Cincinnati for its
control and maintenance," and that on Sep-
tember 1, 1894, said county commissioners
the second time notified the Board of Ad-
ministration of the city, that the Liberty
street bridge and improvements had been
completed and was open for travel, and that
they were ready to turn the same over to
said board, as the representatives of said
city, and requested that they accept the
same, but that said request was refused. And
plaintiffs say, that "unless the said author-
ities of the city of Cincinnati accept said
improvement as requested by plaintiffs, that
the same will suffer great damage for want
of care and attention, and that plaintiffs have
no adequate remedy at law,"

Plaintiffs pray that a writ of mandamus
issue, commanding said Board of Adminis-
tration to forthwith accept and take control
and charge of said improvement.

The defendants file an answer reciting the
acts of the General Assembly referred to in
the petition ; that under the acts of May 4,
1877, (74 O. L., 504;) April 16, 1880, (77 O.
L., 369) ; March 16, 1887, (84 O. L., 356),
the county commissioners levied a tax yield-
ing 893,484.54, and that it appearing this
sum was not sufficient to pay for the bridge,
that in pursuance of the act of 3,1889,
(86 O. L., 580), the Board of Affairs of the
city issued bonds to the sum of 868,000, and
paid the same into the county treasury to
the credit of the Millcreek bridge fund. That
the commissioners proceeded to complete
the bridge and paid all bills therefor, amount-
ing in the aggregate of 8158,293,92, and that
of the fund so raised. the sum of 83190.61,
remained unexpended which should have
been returned to the city, but the commis-
sioners have failed to do so. The defendants
deny that the bridge is upon one of the
public highways of the city, and deny all
allegations of the petition not admitted.

The plaintiffs reply admitting that the
bridge was finished on or about July 24,1893,
but aver that there is only the sum of 82.00
remaining to the credit of the Millcreek
bridge fund.

This appears to be a case in which 8158,293
were expended by the county and city in the
erection of a bridge or viaduct extending

from Liberty street to State street, and was completed in July, 1893, and which is already in such ruinous condition that it cannot be used for travel and in which the county and city are each trying to impose on the other the burden of repairing and keeping it in repair.

I think it clear from the admissions and evidence that Liberty street is a street owned and controlled by the city of Cincinnati, and that said bridge or viaduct and trestle work is an extension of said Liberty street, and was erected and built for the benefit and for the accomodation of public travel over said Liberty street, and is a part of said street.

Under the statutes recited in the pleadings, the improvements were built by money coming partly from the county and partly from the city; under the act of 1877, the erection of the bridge and the expenditure of the money were under the direction of the Board of Public Works of the city; and under the subsequent acts they were under the direction of the county commissioners. Under all the acts the appropriation of the property necessary to straighten Millcreek was made by the county commissioners, and by an act of date March 20, 1891, (88 O. L., 726), the county commissioners were authorized to appropriate property to open and widen Liberty street between Wallace street and State avenue, being a continuation of, or for an approach to said improvement. It appears that two strips of ground were conveyed to the county commissioners by deeds in vol. 657, p. 119 and 662, p. 225, of the Hamilton county records, for the purpose of said improvement. A communication of the county solicitor to the commissioners of November 2, 1894, recites that the title to the property (the viaduct) was taken in the name of the county.

There is, however, nothing in these statutes providing for the ownership of the improvements, or as to the charge and control of the same. Probably, as a consequence of the erection of the bridge being under the direction of the county commissioners after 1880, that after that time and during the time of the erection, the charge and control of the improvement was in the commissioners.

It seems to me, therefore, that the resolution passed by the commissioners on November 3, 1894, was only effective in so far as it notified the city authorities that the improvement was completed. It would seem from the pleadings that the resolution of July 22, 1892, was passed before the improvement was completed, but at all events it would be of no more effect than the subsequent resolution of November 3, 1894.

As the question of the control and charge of the improvement cannot be determined from these special acts, it is necessary to consider the general acts of the state.

The city of Cincinnati has the right to demand and receive a portion of the bridge fund levied on property within the corporation. Therefore, under secs. 860 and 4938, the commissioners are not required to con-

struct or keep in repair the bridges within the city. By sec. 2640 "The council shall have the care, supervision and control of all public highways, streets * * * and bridges, within the corporation, and shall cause the same to be kept open and in repair, and free from nuisance."

It would seem that under this sec. 2640, the care, supervision and control of these improvements are in the city, but if that be so, such duties were imposed on the city on the improvements by reason of the improvement becoming a bridge within the purview of that section, not by reason of any act on the part of the commissioners. That is, the rights and duties were imposed and fixed by law. 1 Handy, 478-9.

If the city is derelict in its duty, it may at the suit of a proper party be required to perform its duty under the statute. But, have the county commissioners any standing in court to call on the city to assume charge and control? If by operation of law the charge and control of the bridge vested in the city authorities under sec. 2640, on the completion of the same, then, as a necessary consequence, the charge and control of the bridge, theretofore existing in the commissioners, ceased to exist, and the commissioners, being by operation of law, relieved of such duties, could hardly be parties beneficially interested on whose information the writ may issue under sec. 6744, Rev. Stat., to require the city to assume charge and control, on its failure to comply with its duty under sec. 2640.

The fact that the county expended money in and acquired title to property for the erection of the bridge, would hardly make it a party beneficially interested on whose information the writ may issue to require the city to assume charge and control. The county can derive no benefit from the bridge; no tolls are provided for. The money was expended in a public improvement, with no purpose of a return.

It seems to me that the plaintiffs are not entitled to the relief asked for, and that the petition should be dismissed at the costs of the plaintiffs.

F. S. Spiegel, County Solicitor for relators.

Frederick Hertenstein, Corporation Counsel, for defendants.